UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————————

NO. 13-CV-15070

————————————————

GWENDOLYN SMITH, on
behalf of herself and her minor child Zeus Harrison Smith,

Plaintiffs/Appellants,

v.

PAUL PAYNE and THE SANTA ROSA PRESS DEMOCRAT,

Defendants/Respondents.

————————————————

Appeal from the United States District Court for the
Northern District of California
No. C 12-01732 DMR, U.S. District Judge Donna M. Ryu

————————————————

ANSWERING BRIEF OF RESPONDENTS

————————————————

Thomas R. Burke
Davis Wright Tremaine LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111-6533
(415) 276-6500 Phone
(415) 276-6599 Fax

Ambika K. Doran
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
(206) 757-8030 Phone
(206) 757-7030 Fax

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant The Press Democrat (incorrectly sued as "The Santa Rosa Press Democrat") discloses that it is owned by Sonoma Media Investments, LLC, a privately held company. No publicly owned company owns 10 percent or more of The Press Democrat's stock.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...........................................................................................1

II.     STATEMENT OF JURISDICTION ...........................................................2

III.    STATEMENT OF THE ISSUES ................................................................2

IV.     STATEMENT OF THE CASE ....................................................................3

V.      STATEMENT OF FACTS ...........................................................................4

VI.     SUMMARY OF ARGUMENT ....................................................................6

VII.    ARGUMENT.................................................................................................7

        A.    The District Court Properly Concluded that Res Judicata Bars
              the Smiths' Claims. ...........................................................................7

        B.    Even if this Court Finds the District Court Erred in Applying
              Res Judicata, It Should Still Affirm Because the Smiths
              Otherwise Failed to Show a Probability of Prevailing on Their
              Claims...............................................................................................14

        C.    The District Court Correctly Found that the Anti-SLAPP Statute
              Applies to the Smiths' Claims..........................................................18

VIII.   CONCLUSION............................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*Adams v. Trimble*,
    2012 U.S. Dist. LEXIS 10084 (E.D. Cal. Jan. 26, 2012) ...................................12

*Baugh v. CBS, Inc.*,
    828 F. Supp. 745 (N.D. Cal. 1993) ....................................................................15

*Buckey v. Cnty. of L.A.*,
    968 F.2d 791 (9th Cir. 1992) .............................................................................11

*California v. F.C.C.*,
    905 F.2d 1217 (9th Cir. 1990) ...........................................................................12

*Cartwright v. Univ. of Cal.*,
    2006 U.S. Dist. LEXIS 91275 (E.D. Cal. Dec. 18, 2006) ...................................9

*Deteresa v. ABC, Inc.*,
    121 F.3d 460 (9th Cir. 1997) .............................................................................15

*Doe v. Gangland Prods., Inc.*,
    730 F.3d 946 (9th Cir. 2013) ......................................................................19, 21

*Finander v. Eskanos & Adler*,
    255 Fed. App'x 192 (9th Cir. Nov. 20, 2007) .....................................................8

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ......................................................................19, 20

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    724 F.3d 1268 (9th Cir. 2013) ...........................................................................19

*Latman v. Burdette*,
    366 F.3d 774 (9th Cir. 2004) .............................................................................13

*Montana v. United States*,
    440 U.S. 147 (1979)...........................................................................................12

*New.Net, Inc. v. Lavasoft*,
  356 F. Supp. 2d 1090 (C.D. Cal. 2004) ............................................................18

*Newcombe v. Adolf Coors Co.*,
  157 F.3d 686 (9th Cir. 1998) ...............................................................17

*Owens v. Kasier Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ...............................................................9

*Paul v. Davis*,
  424 U.S. 693 (1976)...............................................................13

*Roberts v. McAfee, Inc.*,
  660 F.3d 1156 (9th Cir. 2011) ...............................................................14

*S.C. v. Cnty. of Solano*,
  2010 U.S. Dist. LEXIS 138930 (E.D. Cal. Dec. 30, 2010) ..................................8

*Schneider v. TRW, Inc.*,
  938 F.2d 986 (9th Cir. 1991) ...............................................................17

*Single Moms, Inc. v. Mont. Power Co.*,
  331 F.3d 743 (9th Cir. 2003) ...............................................................12

*Smith v. Santa Rosa Press Democrat*,
  2011 WL 5006463 (N.D. Cal. Oct. 20, 2011) ...............................................................3

*Tirado v. U.S. Bank Nat'l Ass'n*,
  2012 U.S. Dist. LEXIS 28100 (N.D. Cal. March 2, 2012)..................................9

*United States v. Liquidators of European Fed. Credit Bank*,
  630 F.3d 1139 (9th Cir. 2011) ...............................................................8

*United States v. Moser*,
  266 U.S. 236 (1924)...............................................................11

*W. Sys., Inc. v. Ulloa*,
  958 F.2d 864 (9th Cir. 1992) ...............................................................8

*Wisconsin v. Constantineau*,
  400 U.S. 433 (1971)...............................................................13

STATE CASES

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
　7 Cal. 4th 503 (1994) ...........................................................................17

*Bernardo v. Planned Parenthood Fed. of Am.*,
　115 Cal. App. 4th 322 (2004) .............................................................18

*Blatty v. New York Times Co.*,
　42 Cal. 3d 1033 (1986) .......................................................................14

*Flatley v. Mauro*,
　39 Cal. 4th 299 (2006) .........................................................................21

*Hall v. Time Warner, Inc.*,
　153 Cal. App. 4th 1337 (2007) .....................................................20, 21

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
　37 Cal. App. 4th 855 (1995) ...............................................................20

*Lieberman v. KCOP Television, Inc.*,
　110 Cal. App. 4th 156 (2003) .............................................................21

*Long v. Walt Disney Co.*,
　116 Cal. App. 4th 868 (2004) .............................................................15

*M.F. Farming, Co. v. Couch Distrib. Co.*,
　207 Cal. App. 4th 180 (2012) .............................................................21

*McGuiness v. Motor Trend Magazine*,
　129 Cal. App. 3d 59 (1982) ................................................................14

*Mendoza v. ADP Screening & Selection Servs., Inc.*,
　182 Cal. App. 4th 1644 (2010) ...........................................................21

*Navellier v. Sletten*,
　29 Cal. 4th 82 (2002) .....................................................................18, 19

*Nicholson v. McClatchy Newspapers*,
　177 Cal. App. 3d 509 (1986) ..............................................................17

*Pasadena Star-News v. Superior Court*,
　203 Cal. App. 3d 131 (1988) ..............................................................16

*Shulman v. Grp. W. Prods., Inc.*,
    18 Cal.4th 200 (1998) ...................................................................................16

*Sipple v. Found. for Nat'l Progress*,
    71 Cal. App. 4th 226 (1999) ..........................................................................20

**FEDERAL STATUTES**

42 U.S.C. § 1983 .........................................................................................8, 12

**STATE STATUTES**

Cal. Civ. Code § 3425.3 ....................................................................................15

Cal. Civ. Pro. Code § 425.16 ...............................................................3, 18, 19

Cal. Penal Code § 240 .......................................................................................16

Cal. Bus. and Prof. Code § 17500 .....................................................................18

**RULES**

Fed. R. Civ. P. 56(d) .........................................................................................13

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Amend. I ...............................................................................1, 15, 18

U.S. Const., Amend. XIV ..................................................................................13

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 21 ..................................................................16

DWT 22925927v7 0059240-000002

# I.   INTRODUCTION

In 2011, Appellants Gwendolyn Smith and her son Zeus Harrison Smith sued Respondents The Press Democrat and its reporter Paul Payne (together, "The Press Democrat") for their reporting on landlord-tenant cases that undisputedly resulted in more than $100,000 in judgments against Ms. Smith.  The district court dismissed the Smiths' claims under California's anti-SLAPP statute because the reporting was absolutely protected by the First Amendment and California's fair and true report privilege, and ordered Appellants to pay The Press Democrat $36,361 in fees and costs ("*Smith I*").  The Smiths belatedly and unsuccessfully tried to appeal the decision.  Dissatisfied, they filed ***another*** lawsuit, premised on the same facts but alleging different claims ("*Smith II*").  The district court again dismissed the claims, this time on res judicata grounds, and awarded The Press Democrat $29,901.21 in fees and costs.  This Court should affirm.

*First*, the district court properly dismissed the Smiths' claims because res judicata bars them.  The district court properly rejected the Smiths' attempt to evade this rule by alleging different causes of action premised on the same underlying facts.  The Smiths argue that res judicata is not a bar because the district court's decision lacked "minimum standards of due process," a contention they apparently premise on a brand new, meritless argument about alleged violations of their substantive due process rights.  Even if the Court looks beyond

res judicata, it should still affirm. The Smiths' claims are independently barred by the statute of limitations, Uniform Single Publication Act, First Amendment and common law.

**Second**, dismissal on these grounds was proper through the procedural vehicle of the anti-SLAPP statute because the lawsuit is premised on The Press Democrat's newsgathering and reporting about Ms. Smith's landlord tenant litigation, acts at the heart of the statute's protections. The Smiths argue that the law does not apply because Mr. Payne acted illegally, but the statute's narrow exception for "illegal" conduct applies only where the defendant **admits** or the evidence **conclusively establishes** the conduct was criminal. Neither is true here.

For these reasons, The Press Democrat asks the Court to affirm the district court's decision.

## II.    STATEMENT OF JURISDICTION

The Press Democrat agrees with the Smiths' statement of jurisdiction.

## III.    STATEMENT OF THE ISSUES

1.    Did the district court properly dismiss the Smiths' claims, given that the court previously dismissed a lawsuit they brought premised on the same facts?

2.    If not, did the district court properly dismiss the Smiths' claims because they otherwise failed to prove a probability of prevailing on their claims?

3.     Did the district court correctly find that the exception in the anti-SLAPP statute, Cal. Code Civ. P. § 425.16 *et seq.* for illegal conduct does not exempt the Smiths' lawsuit from the law's purview?

## IV.   STATEMENT OF THE CASE

On May 17, 2011, the Smiths filed their first complaint against Respondents, alleging claims for defamation. ER 024  On October 11, 2011, they filed an Amended Complaint. ER 045.  The Amended Complaint, asserting claims for "intrusion of solitude, public disclosure of private facts, false light publicity, civil conspiracy and defamation *per se*," ER 046 ¶ 7, alleged that reporter Paul Payne "physically intruded upon Plaintiff's home on the morning of April 8, 2010" and "wr[o]te a story" without "granting a personal interview to Plaintiff despite Plaintiff's multiple requests," and that this article and others contained false statements that injured Ms. Smith's reputation, *id.* ¶ 11.  On October 20, 2011, the district court granted The Press Democrat's anti-SLAPP motion and dismissed the complaint. ER 023.  *See also Smith v. Santa Rosa Press Democrat*, 2011 WL 5006463, at *7 (N.D. Cal. Oct. 20, 2011).  It denied the Smiths' motion to amend or alter the judgment on November 23, 2011. ER 035.  The Court awarded The Press Democrat $36,361 in attorneys' fees and costs on December 19, 2011. ER 047.  The Smiths filed a notice of appeal more than 30 days later, and this Court dismissed their case for lack of jurisdiction. ER 043.

Undeterred, the Smiths filed this lawsuit on April 6, 2012, premised on the identical facts. The Complaint states that "[o]n the morning of April 8th, 2010," Mr. Payne and a photographer "appeared uninvited" on the steps outside the Smiths' residence; that after they left, Ms. Smith went to Respondents' offices "to set up a personal interview before the paper went to press"; and that "Payne refused to grant such personal interview," precluding "balanced coverage of a two-sided dispute." ER 183 ¶¶ 13-14. The complaint alleges claims for trespass, assault, invasion of privacy, conspiracy to invade privacy, intentional infliction of emotional distress, conspiracy to intentionally inflict emotional distress, and unfair and deceptive trade practices. ER 184-187. The Press Democrat filed a motion to strike on October 11, 2012. [Dkt. 34] On December 20, 2012, the Court held argument on the motion, and on December 26, granted it, finding the claims barred by res judicata. ER 011. On January 7, 2013, the Smiths filed a notice of appeal. ER 017. On April 15, 2013, the district court awarded The Press Democrat $29,901.21 in fees and costs. ER 015.

## V.    STATEMENT OF FACTS

The Smiths' claims are premised on a series of articles published in 2010 in The Press Democrat newspaper and on its website, www.pressdemocrat.com, that reported on developments in landlord-tenant proceedings filed against Ms. Smith in Sonoma County Superior Court. ER 065-080. These were no ordinary

landlord-tenant disputes: two of Ms. Smith's former Sonoma County landlords secured judgments against her totaling more than $100,000. ER 073, 079. One of her former landlords purportedly lost her home when Ms. Smith stopped paying rent. ER 076-078. Landlords in two other states made similar allegations against Ms. Smith and one in Oregon filed a criminal complaint against her, developments The Press Democrat also reported. ER 079-080.

The Smiths' first and second lawsuits are based on the same facts and premise. In both, they claim Mr. Payne unlawfully approached them on April 8, 2010. ER 046 ¶ 11 (he "physically intruded upon Plaintiff's home on the morning of April 8, 2010"); ER 183 ¶ 8 (he "appeared uninvited" on the steps outside Ms. Smith's residence). In both, they allege The Press Democrat failed to interview Ms. Smith. *See* ER 046 ¶ 11 (Mr. Payne "wr[o]te a story" without "granting a personal interview to Plaintiff."); ER 183 ¶ 14 (Mr. Payne "refused to grant [a] personal interview"). In both, they claim The Press Democrat worked with unethical lessors and attorneys. ER 048 ¶ 17 (Respondents "associated with illegal lessors and deceitful attorneys … to … accomplish the unlawful objectives of severely harassing" Ms. Smith); ER 185 ¶ (Respondents were assisted by "unethical lawyers" and defendants in lawsuits Ms. Smith brought to "creat[e] and produc[e] one-sided, factually inaccurate coverage"). Finally, in both, they claim The Press Democrat could not report on the landlord-tenant lawsuits because they

are "confidential." ER 047 ¶ 11 (accusing Respondents of publishing material about "Plaintiff's pending litigation under court seal"); ER 185 ¶ 28 (alleging Respondents "publicize[d] a private dispute whose address was still under seal with the court").

Under oath, Mr. Payne rebutted the Smiths' allegations about his visit to their home in a declaration. ER 062-063 ¶ 6. He explained that on the morning of April 8, 2010, he visited the home of Connie Cook, one landlord in a dispute with Ms. Smith who claimed Ms. Smith failed to pay rent for living in a barn Ms. Cook had converted. *Id.* Mr. Payne walked to the barn (over what the Smiths admit is a public easement, ER 184 ¶ 19) and attempted to talk with Ms. Smith by knocking on her door. He was greeted with a demand that he leave and threat to sue if he wrote any articles about her. ER 062-063 ¶ 6. He immediately left. He denies calling the Smiths "serial squatters" and states that he was not in close proximity with them. *Id.* When Mr. Payne called Ms. Smith for another article, she did not answer or respond. ER 063 ¶ 7.

## VI.   SUMMARY OF ARGUMENT

The district court properly dismissed this lawsuit on res judicata grounds. In *Smith I*, the district court dismissed the Smiths' claims because they were undeniably premised upon court records in actions brought against Ms. Smith by several landlords after her failure to pay rent and thus were absolutely protected by

California's fair and true report privilege. In this case, the district court properly denied the Smiths a second bite at the apple. Well-established principles estopped the Smiths from alleging new claims relying on the same nucleus of facts.

Even if the Smiths could overcome res judicata, their claims are hopelessly deficient. All of them seek redress for reputational harm premised on a publication, but the one-year statute of limitations is an absolute bar. Nor can the Smiths recover damages for more than one tort alleging reputational harm. Further, the Smiths' claims fail because they cannot show a probability of prevailing on the elements of each claim, as set forth below.

Finally, dismissal was proper pursuant to the anti-SLAPP statute, which provides a quick method for courts to dismiss meritless claims targeting the exercise of free speech. Contrary to the Smiths' claims, this lawsuit does not fall within the law's narrow exception for criminal conduct, which requires the defendant *admit* it acted illegally or that the evidence conclusively establish that it did. Respondents' efforts to interview Ms. Smith and reporting on court proceedings in which she was involved were constitutionally protected conduct.

## VII.  ARGUMENT

### A.    The District Court Properly Concluded that Res Judicata Bars the Smiths' Claims.

Res judicata bars plaintiffs from bringing new actions that "involve exactly the same parties and are premised on precisely the same set of facts and

DWT 22925927v7 0059240-000002

circumstances" as the earlier lawsuit. *S.C. v. Cnty. of Solano*, 2010 U.S. Dist. LEXIS 138930, at *8-9 (E.D. Cal. Dec. 30, 2010). That the later action alleges different claims for relief than the earlier one "does not overcome the strictures of res judicata because different theories of recovery are not separate primary rights." *Id.* (granting motion to strike claims under 42 U.S.C. § 1983 based on the same allegations as the original complaint) (quotation marks and alteration omitted). The grant of an anti-SLAPP motion is "a final determination of the rights of the parties based on the merits" and is entitled to full res judicata effect. *Id.* at *10. *Accord Finander v. Eskanos & Adler*, 255 Fed. App'x 192, 192 (9th Cir. Nov. 20, 2007) ("district court properly dismissed the … action on the basis of res judicata because it involved the same claims and parties as a prior state court action that was dismissed on the merits under the [anti-SLAPP] laws").

This Court has repeatedly stated that "[r]es judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011) (quotation marks omitted). *Accord W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 868 (9th Cir. 1992) ("Res judicata bars both claims actually litigated and those that arise from the same transaction and *could have been* litigated in a prior proceeding.") (emphasis in original). "The central criterion in determining

whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Owens v. Kasier Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)).

For example, in *Owens*, 244 F.3d at 714, this Court concluded that res judicata applied because two lawsuits arose from the same nucleus of facts, even though the second action alleged different causes of action. The court rejected the plaintiff's assertion that these claims were "distinctly different" and "not the subject of the prior action." *Id.* at 713-14. Because the "additional allegations" "related to the same set of facts as the allegations," and because "the two cases could have conveniently been tried together," res judicata barred the subsequent action. *Id.* at 714. *See also Tirado v. U.S. Bank Nat'l Ass'n*, 2012 U.S. Dist. LEXIS 28100, at *7 (N.D. Cal. March 2, 2012) (barring claims premised on same foreclosure proceedings); *Cartwright v. Univ. of Cal.*, 2006 U.S. Dist. LEXIS 91275, at *16 (E.D. Cal. Dec. 18, 2006) (plaintiff's attempt to avoid res judicata by "pointing to additional claims for relief" in second lawsuit was "unavailing").

The Smiths do not challenge the district court's decision that both lawsuits concern the same nucleus of operative facts, meaning that all of their claims were or could have been litigated in *Smith I. Id.* Nor is there any dispute that the district

court's first order granting The Press Democrat's motion to strike was final – after all, the Smiths tried to appeal it.

In *Smith I*, the Smiths claimed Mr. Payne "physically intruded upon Plaintiff's home on the morning of April 8, 2010." ER 046 ¶ 11. They also claimed that Respondents "associated with illegal lessors and deceitful attorneys … to … accomplish the unlawful objectives of severely harassing" them. ER 048 ¶ 17. They further alleged that The Press Democrat could not report on the landlord-tenant lawsuits involving Ms. Smith because they were "confidential." ER 036. The Smiths asserted claims for "conspiracy," "intrusion on solitude," "public disclosure of private facts," and "false light publicity." ER 046 ¶ 7.

The *Smith I* court summarily rejected all of these claims, granting The Press Democrat's special motion to strike the complaint. The court also denied the Smiths' motion to amend or alter the judgment. The Smiths' recourse was to appeal the anti-SLAPP decision and denial of the motion to amend. But they failed to timely prosecute that appeal, and this Court dismissed it. ER 043.

The gravamen of the Smiths' second lawsuit is identical. They did or could have asserted all of the grounds for recovery in *Smith I*, as they are all based on the same set of facts – The Press Democrat's reporting and publication of news articles about landlord-tenant legal proceedings filed in Sonoma County and Oregon against Ms. Smith, and more specifically, Mr. Payne's attempt to interview her, an

alleged conspiracy between the newspaper, its reporters and lessors and attorneys, and the fact that The Press Democrat reported on  legal proceedings that the Smiths perceived to be confidential.  ER 183-187 ¶¶ 8-47.  The *Smith I* court rejected those arguments.  ER 026-032.  That the second action adds claims based on the same facts is of no moment.  The district court properly dismissed the Smiths' second lawsuit with prejudice.  *See* ER 032.

Although the district court premised its decision on res judicata, a doctrine the Smiths' admitted was a "hurdle," Dkt. 47 at 4, the Smiths devote the bulk of their brief to different, entirely new arguments.  This Court should reject their meager attempt to evade this bar, which, by alleging denial of their "fundamental due process," App. Br. at 24, "aims in the general direction of the federal Constitution with buckshot."  *Buckey v. Cnty. of L.A.*, 968 F.2d 791, 894 (9th Cir. 1992).

None of the cases the Smiths cite are applicable.  The "entire body of Supreme Court case law" to which they refer, App. Br. at 23, ***supports*** Respondents' position.  For example, the nearly century-old decision *United States v. Moser* requires dismissal of a second action "***even if the second suit is for a different cause of action***," so long as "a court of competent jurisdiction" has "directly determined" the question.  *United States v. Moser*, 266 U.S. 236, 241 (1924) (emphasis added) (quotation marks omitted).  And the majority of the other

cases the Smiths cite discuss procedural safeguards when a party seeks to bar a claim previously adjudicated in a different forum altogether. *See Montana v. United States*, 440 U.S. 147 (1979) (state court)[1]; *California v. F.C.C.*, 905 F.2d 1217 (9th Cir. 1990) (agency action).

In any event, the *Smith I* court afforded the Smiths ample due process. A plaintiff is "not denied the right to be heard" for the purposes of claim preclusion "merely because [their] arguments there were unavailing." *Adams v. Trimble*, 2012 U.S. Dist. LEXIS 10084, at *30 (E.D. Cal. Jan. 26, 2012). That is precisely what happened here. The Smiths claim the *Smith I*'s court failure to conduct a hearing or allow them discovery deprived them of due process. But the Court need not consider this brand new argument, which is premised on an alleged violation of Ms. Smith's liberty interest in her reputation and her constitutional right to privacy. App. Br. at 22-23. Even if it *does* consider it, these claims are obviously meritless because the Smiths have neither alleged nor shown that The Press Democrat is a government actor. *See* 42 U.S.C. § 1983; *Single Moms, Inc. v. Mont. Power Co.*, 331 F.3d 743, 747 (9th Cir. 2003).[2]

---

[1] The Smiths quote a portion of *Montana v. United States*, App. Br. at 25, but that case actually refused to allow the federal government to relitigate the constitutionality of a tax that a state court had already found valid. 440 U.S. at 147-48.

[2] Further, "reputation alone, apart from some more tangible interests," is not "'liberty' or 'property' sufficient to invoke the procedural protection of the Due

Nor does the *Smith I* court's denial of the Smiths' request for discovery on Mr. Payne's intent render res judicata inapplicable. The Smiths base their argument on Fed. R. Civ. P. 56(d), App. Br. at 4, which allows a court to permit discovery to oppose a summary judgment motion if the opponent shows that "it cannot present facts essential to justify its opposition." But, as the *Smith I* court properly found when it granted The Press Democrat's anti-SLAPP motion on the basis of privilege, the Smiths were not entitled to take discovery on intent because, even if they ***could*** show intent, "[n]o amount of discovery would cure the deficiencies identified in [their] claims." ER 032 at n.6.

Finally, the Smiths cite no relevant cases for their novel proposition that "res judicata is suspended in questions of law." App. Br. at 24. They rely solely on *Latman v. Burdette*, 366 F.3d 774, 784 (9th Cir. 2004), but in that case, a bankruptcy court allowed a trustee's surcharge motion after denial of the debtors' surcharge motion because it was "impossible to conclude that the Trustee's denial of discharge and surcharge actions arose out of the same transactional nucleus of

---

Process Clause." *Paul v. Davis*, 424 U.S. 693, 701-02 (1976) (no due process violation stemming from listing plaintiff as "active shoplifter" on flyer even though he claimed it would "seriously impair his future employment opportunities"). *Paul v. Davis* distinguished the primary case upon which the Smiths rely, *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), App. Br. at 22. It stated that "[t]he 'stigma' resulting from the defamatory character of the posting" did not "standing alone, deprive[] Constantineau of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." *Paul*, 424 U.S. at 709.

DWT 22925927v7 0059240-000002

facts." Here, in contrast, as the district court determined and the Smiths do not and cannot refute, the same nucleus of facts forms the basis for both their lawsuits.

    **B.**    **Even if this Court Finds the District Court Erred in Applying Res Judicata, It Should Still Affirm Because the Smiths Otherwise Failed to Show a Probability of Prevailing on Their Claims.**

The district court did not reach (and this Court need not reach) the merits of each claim because res judicata bars them all. But even if it does, it should affirm.

*First*, the statute of limitations bars the Smiths' claims. Free speech protections "are not peculiar to [defamation] actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042-1043 (1986). Thus, courts dismiss *all* claims premised on allegedly false statements if the plaintiff fails to bring them within one year. *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166 (9th Cir. 2011) (affirming grant of anti-SLAPP motion based on one-year statute of limitations for defamation and false light claims). *McGuiness v. Motor Trend Magazine*, 129 Cal. App. 3d 59, 63 (1982) (negligence claim). Because the Smiths' claims are all premised upon Respondents' purportedly one-sided reporting that damaged Ms. Smith's reputation, and because they brought this lawsuit well more than a year after the 2010 reporting and publication of the articles, the district court properly dismissed the Smiths' claims for this additional reason.

***Second***, the Uniform Single Publication Act, which prohibits plaintiffs from recovering for libel, slander, invasion of privacy, or "any other tort" premised upon a single publication in one issue of a newspaper, also bars the Smiths' claims. Cal. Civ. Code § 3425.3. *See Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 872-73 (2004) (dismissing appropriation, right of publicity, and emotional distress claims); *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 746 (N.D. Cal. 1993) (applying Act to claims for seclusion, trespass, unfair competition, fraud, and negligent and intentional emotional distress). The Smiths' tort claims all arise from the same publications. First Amendment protections apply equally to bar these claims.

***Third***, the Smiths' trespass claim fails because a reporter's visit to a home for an interview is not "trespassing." *See Deteresa v. ABC, Inc.*, 121 F.3d 460, 466 (9th Cir. 1997) (reporter was not liable for coming to the door of plaintiff's condominium, knocking, and asking to do an interview). The Smiths admit Mr. Payne used an easement to the public to approach their apartment, ER 184 ¶ 19 and cannot and do not dispute that he never entered their home, was invited into the yard by their landlord, ER 062 ¶ 6, and left when asked, *id.* This conduct is not trespass as a matter of law.

***Fourth***, the Smiths cannot show a probability of prevailing on their assault claim. An "assault" is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. It

occurs when someone "(a) acts intending to cause a harmful or offensive contact with the person of the other or an imminent apprehension of such a contact and (b) the other is thereby put in such imminent apprehension."  Restatement (Second) of Torts § 21.  Here, the Smiths failed to demonstrate that they were about to be touched in a harmful or offensive manner merely because (they claim) they heard Mr. Payne in the yard below them, climbing the stairs to their doorstep, and shouting (even if he did) "serial squatters."  ER 185 ¶ 25; ER 062-063 ¶ 6.

*Fifth*, the Smiths' claim for "invasion of privacy" – which appears to be based on the public airing of private facts, ER 185 ¶ 27 – fails not only because it is duplicative of the Smiths' original libel claim, but also because such a claim does not lie where the matter aired is newsworthy.  *Shulman v. Grp. W. Prods., Inc.*, 18 Cal.4th 200, 215 (1998).  *See also Pasadena Star-News v. Superior Court*, 203 Cal. App. 3d 131, 133 (1988) ("dissemination of newsworthy facts cannot support an action for invasion of privacy").  To be newsworthy, it is only necessary that "*some* reasonable members of the community could entertain a legitimate interest in it."  *Shulman*, 18 Cal. 4th. at 225.  As the *Smith I* court found, "the subject matter of [Respondents'] articles – contentious landlord-tenant disputes and

the consequences thereof – are a matter of significant public interest." ER 026.

Thus, this claim, too, fails.[3]

   **Sixth**, the Smiths failed to show a probability of prevailing on their

intentional infliction of emotional distress claim. Again, this claim merely

duplicates the Smiths' previously dismissed defamation claim. It also fails because

the Smiths cannot show the elements of a claim, i.e., that "(1) the defendants'

conduct was outrageous; (2) the defendants intended to cause, or recklessly

disregarded the likelihood of causing, emotional distress; (4) the plaintiff

experienced severe emotional suffering; and (4) [the defendants' actions were the]

actual and proximate cause of emotional distress." *Newcombe v. Adolf Coors Co.*,

157 F.3d 686, 696 (9th Cir. 1998). To qualify as outrageous, conduct must be "so

extreme as to exceed all bounds of that usually tolerated in a civilized society."

*Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991). The Smiths cannot

begin to show the necessary "extreme and outrageous" conduct or that they

---

[3] "Conspiracy to invade privacy" is not an independent claim in California.
*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510, 514 (1994).
Because the Smiths cannot show the commission of the underlying "invasion of
privacy" tort, they have no claim for conspiracy. *Id.* at 511. And it is news
reporting, not an act of conspiracy, for a reporter to interview the participants in
the landlord-tenant proceedings that were the subject of The Press Democrat
articles. *See Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d 509, 519
(1986) ("the news gathering component of the freedom of the press – the right to
seek out information – is privileged at least to the extent it involves 'routine' …
reporting techniques").

suffered "severe" emotional distress as a matter of law. Nor can they show that any alleged severe emotional distress arose from The Press Democrats newsgathering activities rather than the landlord-tenant lawsuits in which Ms. Smith was embroiled.

*Finally*, the Smiths cannot state a claim for violation of California Business and Professions Code Section 17500 because that statute applies to advertising, not editorial content. Statements made in noncommercial speech that are entitled to full First Amendment protection are not subject to California's false advertising law, just as statements in noncommercial speech cannot be "unlawful, unfair or fraudulent" under California's Unfair Competition Law. *See Bernardo v. Planned Parenthood Fed. of Am.*, 115 Cal. App. 4th 322, 350 (2004) (striking Section 17500 claim because statements by Planned Parenthood were noncommercial speech and were not untrue or misleading); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1110 (C.D. Cal. 2004) (granting anti-SLAPP motion to strike UCL claim based on protected speech).

### C. The District Court Correctly Found that the Anti-SLAPP Statute Applies to the Smiths' Claims.

The district court correctly used California's anti-SLAPP statute, Cal. Civ. Pro. Code § 425.16, as the procedural vehicle for dismissal in this case. Courts follow a two-step process to decide whether the anti-SLAPP law bars a claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). "First, the court decides whether

18

the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* To do so, it must demonstrate that the plaintiff's claim arises from actions by the defendant that "fit[] one of the categories spelled out in … section 425.16, subdivision (e)." *Id.* Subdivision (e) includes, in relevant part, "any … writing made in connection with an issue under consideration or review by a … judicial body" and "any … conduct in furtherance of the exercise of the constitutional right … of free speech in connection with … an issue of public interest." Cal. Civ. Pro. Code § 425.16 (e)(2) & (4). Second, if the defendant makes this threshold showing, the burden shifts to the plaintiff to establish "a probability that [it] will prevail on the claim[s]." *Id.* § 425.16 (b)(1). If not, courts must dismiss the claims with prejudice. *Id.* The California Legislature mandated that the anti-SLAPP statute "be construed broadly." *Id.* § 425.16(a)(1).[4]

The law undisputedly applies here for two reasons. First, as this Court has found, "pre-publication or pre-production acts such as investigating, newsgathering, and conducting interviews constitute conduct that furthers the right of free speech" under California's anti-SLAPP statute. *Gangland Prods.*, 730 F.3d at 953. *See also Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1346-47

---

[4] This Court has "determined that the anti-SLAPP statute is available in federal court." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013). *See also Doe v. Gangland Prods., Inc*., 730 F.3d 946 (9th Cir. 2013); *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir. 2010).

(2007) (applying law not only to the defendants' broadcast of an entertainment news program, but also to their production activities, including a producer's alleged trespass). Second, the reporting concerns judicial proceedings. *See, e.g.*, *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co*., 37 Cal. App. 4th 855, 863 (1995) (newspaper's reporting about civil lawsuits and administrative proceedings protected by statute); *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 237-38 (1999) (magazine's statements about custody proceeding protected as report about official proceeding).[5]

The Smiths claim that the anti-SLAPP statute does not apply because Mr. Payne allegedly acted illegally as a matter of law. But the district court properly rejected this argument, which relies on an exception to the anti-SLAPP law applicable in limited circumstances that are not present here.

As this Court has recognized, "defendants may satisfy their burden to show that they were engaged in conduct in furtherance of their right of free speech under the anti-SLAPP statute, ***even when their conduct was allegedly unlawful***." *Gangland Prods*., 730 F.3d at 954 (emphasis added). *See also Hall*, 153 Cal. App.

---

[5] Nor can there be any question that the reporting concerned a matter of public interest. Courts "must construe … 'issue of public interest' … broadly" to include any "topic of widespread, public interest." *Hilton*, 599 F.3d at 902 (finding a birthday card poking fun at celebrity Paris Hilton fell within the scope of the statute). Ms. Smith's purported serial delinquencies as a tenant – which have consumed significant judicial resources and purportedly put one landlord into bankruptcy – indisputably concern matters of significant public interest. ER 026; ER 065-080.

4th at 1347 (applying statute to alleged trespass and intrusion as a result of newsgathering); *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 162 (2003) (surreptitious recording). The case upon which the Smiths rely, *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), held that the anti-SLAPP statute does not apply where "the defendant ***concedes***, or the evidence ***conclusively establishes***, that the assertedly protected … activity was illegal as a matter of law." 39 Cal. 4th at 320 (emphasis added). The term "illegal" means "criminal," not conduct that is "merely violative of a statute." *M.F. Farming, Co. v. Couch Distrib. Co.*, 207 Cal. App. 4th 180, 196-97 (2012) (citations omitted). *See also Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th 1644, 1654 (2010) (*Flatley* only applies to conduct that is indisputably "criminal"). Neither is true here.

Far from conceding the allegedly unlawful acts were criminal, Respondents contend they acted entirely lawfully and within their constitutionally protected rights as journalists, denying the Smiths' version of events, which even if true, does not constitute illegal conduct. The Smiths claim that Mr. Payne "appeared" outside their home and called them "serial squatters," causing them fear. ER 183. Mr. Payne explained that he tried to knock on the Smiths' door only upon visiting their landlord, Connie Cook, and for the purpose of getting Ms. Smith's reaction to Ms. Cook's claims that she failed to pay rent. ER 062-063 ¶ 6. He disputes calling the Smiths "serial squatters" and states he did not come in close proximity with

Ms. Smith or her son nor enter their home. *Id.* The Smiths can offer no evidence to "conclusively establish" that Mr. Payne's acts were illegal, for the same reasons that require dismissal of their claims. *See supra* at VII.B.

## VIII. CONCLUSION

For these reasons, Respondents respectfully ask the Court to affirm the district court's decision, dismiss Plaintiffs' appeal, and award The Press Democrat its mandatory attorneys' fees on appeal.

RESPECTFULLY SUBMITTED this 18th day of November, 2013.

Davis Wright Tremaine LLP
Attorneys for Respondents

By /s/ Thomas R. Burke
    Thomas R. Burke

DWT 22925927v7 0059240-000002

## STATEMENT OF RELATED CASES

Appellee is not aware of any related cases pending in this Court.

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Ambika K. Doran
Ambika K. Doran